UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMY L. WEAVER
   Plaintiff,

v.

Case No. 1:14-cv-1156

HON. PAUL L. MALONEY

COMMISSIONER OF SOCIAL
SECURITY,
   Defendant.
                /

## OPINION

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner). Plaintiff Amy Weaver seeks review of the Commissioner's decision denying her claim for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1998). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an

application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was 32 years of age on the date of the Administrative Law Judge's (ALJ) decision. (Tr. 17, 81.) She applied for benefits on January 17, 2012, alleging that she had been disabled since October 1, 2006, due to psychogenic seizures and migraines. (Tr. 81, 170–78, 192.) Plaintiff's applications were denied on May 25, 2012, after which time she requested a hearing before an ALJ. (Tr. 113–34.) On April 22, 2013, Plaintiff appeared before ALJ Angelita Hamilton with testimony being offered by Plaintiff and a vocational expert (VE). (Tr. 39–80.) Plaintiff was accompanied and questioned by a non-attorney

representative. (Tr. 41.) In a written decision dated June 18, 2013, the ALJ determined that Plaintiff was not disabled. (Tr. 17–38.) Thereafter, the Appeals Council declined to review the ALJ's determination, making it the Commissioner's final decision in the matter. (Tr. 6–11.) Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff has the burden of proving the existence and severity of limitations caused by her impairments and that she is precluded from performing past relevant work through step four. *Jones v.*

---

[1]
1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. § 404.1520(f)).

*Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Hamilton determined Plaintiff's claim failed at the fifth step of the evaluation. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date.[2] (Tr. 22.) At the second step in the sequential evaluation, the ALJ determined Plaintiff had the following severe impairments: (1) migraines; (2) obesity; (3) psychogenic seizures; (4) borderline IQ; (5) depression; and (6) a somatic disorder. (Tr. 22). At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments. (Tr. 23–27.) At the fourth step, the ALJ found that Plaintiff retained the RFC based on all the impairments:

> to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except she can never climb ladders, ropes, or scaffolds, but can frequently climb ramps and stairs. She is limited to occasional exposure to hazardous moving machinery, raw chemicals or solutions, and unprotected heights. Further, her work must be limited to simple, routine, and repetitive tasks with occasional interaction with coworkers, supervisors, and public.

(Tr. 27.) Continuing with the fourth step, the ALJ determined that Plaintiff had no past relevant work. (Tr. 31.)

At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy which Plaintiff could perform given her limitations. *See Richardson*, 735 F.2d at 964. The VE testified that there existed approximately 12,400 regional jobs in the state of Michigan as a laundry

---

[2]Plaintiff's application initially listed July 1, 2002, as her alleged onset date of disability. (Tr. 170.) On April 22, 2013, Plaintiff amended the onset date to October 1, 2006. (Tr. 192.) In portions of the ALJ's decision, the ALJ appears to have mistakenly used Plaintiff's original alleged onset date (*see* Tr. 22), but Plaintiff has not claimed that this error prejudiced her in any way.

laborer, day worker, and kitchen helper that an individual similar to Plaintiff could perform (Tr. 74.) This represents a significant number of jobs. *See*, *e.g.*, *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *McCormick v. Sec'y of Health & Human Servs.*, 861 F.2d 998, 1000 (6th Cir. 1988).

Accordingly, the ALJ concluded that Plaintiff was not disabled under the Social Security Act at any point from the time of her alleged onset of disability through the date of the decision. (Tr. 33.)

## DISCUSSION

Plaintiff's statement of errors argues the ALJ erred in:

1. Failing to find that Plaintiff met or equaled Listing 12.07, the listing for Somatoform disorder;

2. Failing to find that Plaintiff's migraines were at least of equal medical significance to Listing 11.03, the listing for nonconvulsive epilepsy;

3. Failing to properly address Plaintiff's severe impairments in determining the RFC;

4. Making improper credibility determinations; and

5. Giving insufficient weight to the consultative examiner and Plaintiff's treating health care provider.

(ECF No. 11, PageID.1251.) The Court will consider these issues below.[3]

### A. Listing 12.07

Plaintiff first claims that the ALJ erred "when she failed to find that Plaintiff's disorder does not meet or is not equivalent to the Listing for Somatoform Disorder." (ECF No. 11, PageID.1252.) A claimant bears the burden of demonstrating that she meets or equals a listed impairment at the third step of the

---

[3] The Court notes that Plaintiff's counsel has failed to follow the Court's notice of January 22, 2015, regarding page lengths for briefs. Counsel submitted a brief twenty-five pages in length, exceeding the Court's direction that "[i]nitial briefs may not exceed 20 pages without leave of court." (ECF No. 8, PageID.1237.) Plaintiff's counsel should be aware that future briefs which exceed page limits without leave of the Court may be stricken.

sequential evaluation. *Evans v. Sec'y of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987). In order to be considered disabled under the Listing of Impairments, "a claimant must establish that [her] condition either is permanent, is expected to result in death, or is expected to last at least 12 months, as well as show that [her] condition meets or equals one of the listed impairments." *Id.* An impairment satisfies the listing only when it manifests the specific findings described in the medical criteria for that particular impairment. 20 C.F.R. §§ 404.1525(d); 416.925(d). A claimant does not satisfy a particular listing unless all of the requirements of the listing are present. *See Hale v. Sec'y of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir.1987). *See, e.g., Thacker v. Soc. Sec. Admin.*, 93 F. App'x 725, 728 (6th Cir. 2004) ("[w]hen a claimant alleges that he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency"). If a claimant successfully carries this burden, the Commissioner will find the claimant disabled without considering the claimant's age, education and work experience. 20 C.F.R. §§ 404.1520(d); 416.920(d).

Here, Plaintiff contends that she meets the requirements of Listing 12.07, which provides as follows:

12.07 *Somatoform Disorders*: Physical symptoms for which there are no demonstrable organic findings or known physiological mechanisms.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied

A. Medically documented by evidence of one of the following:

1. A history of multiple physical symptoms of several years duration, beginning before age 30, that have caused the individual to take medicine frequently, see a physician often and alter life patterns significantly; or

2. Persistent nonorganic disturbance of one of the following:

     a.  vision; or
     b.  speech; or
     c.  hearing; or
     d.  use of a limb; or
     e.  movement and its control (e.g., coordination disturbance, psychogenic seizures, akinesia, dyskinesia; or
     f.  sensation (e.g., diminished or heightened).

   3.  Unrealistic interpretation of physical signs or sensations associated with the preoccupation or belief that one has a serious disease or injury;

  AND

  B.  Resulting in at least two of the following:

   1.  Marked restriction of activities of daily living; or
   2.  Marked difficulties in maintaining social functioning; or
   3.  Marked difficulties in maintaining concentration, persistence, or pace; or
   4.  Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.07.

  The ALJ found that Plaintiff did not meet the Paragraph B requirement of Listing 12.07 because "the claimant's mental impairments do not cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation, each of extended duration." (Tr. 26.) Specifically, the ALJ concluded that Plaintiff had no limitation in her activities of daily living, a moderate limitation in social functioning, and a moderate limitation in Plaintiff's concentration, persistence or pace. (Tr. 25–26.) The ALJ also found that Plaintiff had not experienced any episodes of decompensation of extended duration. (Tr. 26.) Plaintiff argues that the ALJ should have found that she had a marked restriction in her activities of daily living and experienced marked difficulties in maintaining concentration, persistence, or pace. (ECF No. 11, PageID.1254.)

The ALJ's determination regarding the Paragraph B criteria is supported by substantial evidence. As defined in the regulations, "marked" means "more than moderate but less than extreme." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(C). Despite Plaintiff's complaints of seizures and migraines, Plaintiff testified that she was nonetheless able to complete a wide variety of activities. For example, Plaintiff stated that during the mornings, she would get her daughter ready for school and take her to the bus stop. She spent the rest of the day taking care of her younger daughter. (Tr. 51, 217.) Plaintiff reads romance novels. (Tr. 53.) She is able to care for pets and take care of her personal care. (Tr. 217.) Plaintiff is able to prepare her own meals and meals for her children, do dishes and laundry, clean, work in the garden, and mow the lawn. (Tr. 53, 218.) She goes shopping, and is able to pay bills, count change, and handle a savings account and checkbook. (Tr. 219.) Plaintiff attends parent teacher conferences, sometimes goes to church, and takes her daughter to girl scouts with her husband. (Tr. 55.) Plaintiff stated she does not drive, but admitted to driving in December of 2012, even though she was told not to drive until her seizures had ended. (Tr. 49, 267). The record provides substantial evidence supporting the ALJ's conclusion that Plaintiff did not have marked restrictions in her activities of daily living or marked difficulties in maintaining concentration, persistence, and pace.

Plaintiff does not argue that the ALJ erred in her discussion regarding the two other Paragraph B criteria, which found that Plaintiff had less than marked difficulties in social function and that she did not experience episodes of decompensation which lasted for an extended duration. Thus she has waived any claim of error against the determination. Even if she had not, substantial evidence supports the ALJ's conclusion regarding these criteria as well. As noted above, Plaintiff was able to care for her children, socialize with her family, attend church and parent/teacher conferences, and go shopping. She speaks with

her friends on the phone, and stated she was able to get along well with authority figures. (Tr. 220, 222.) Thus, the ALJ's determination that Plaintiff had less than marked difficulties in social functioning is supported by substantial evidence.

Episodes of decompensation are "exacerbations or temporary increases in symptoms or signs accompanies by a loss of adaptive functioning." They "may be inferred from medical records showing significant alteration in mediation or documentation of the need for a more structure psychological support system." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(C)(4). The record does not demonstrate that Plaintiff underwent such an episode for an extended duration. Accordingly, substantial evidence supports the ALJ's conclusion that Plaintiff did not satisfy the criteria in Paragraph B, and thus Plaintiff's claim that she meets the requirements of Listing 12.07 fails.

Plaintiff relatedly contends that her impairments medically equal the severity requirements for Listing 12.07, and that the ALJ should have consulted a medical expert on the issue. (ECF No. 11, PageID.1254–55.) The Court is not persuaded. "For a claimant to qualify for benefits by showing that [her] unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, [she] must present medical findings equal in severity to all criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990). A social security claimant cannot qualify for benefits under the equivalence step by merely "showing that the overall functional impact of [her] unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Id.* An impairment will be deemed medically equivalent to a listed impairment if the symptoms, signs and laboratory findings as shown in the medical evidence are at least equal in severity and duration to a listed impairment. *See Land v. Sec'y of Health & Human Servs.*, 814 F.2d 241, 245 (6th Cir.1986) (per curiam). Generally, the opinion of a

9

medical expert is required before a determination of medical equivalence is made. *Retka v. Comm'r of Soc. Sec.*, No. 94–2013, 1995 WL 697215 at *2 (6th Cir., Nov 22, 1995) (citing 20 C.F.R. § 416.926(b)). If the evidence fails to demonstrate the required severity as to even one of the criteria, it would be fatal to plaintiff's claim. *See Hale*, 816 F.2d at 1083; *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984). "Even in cases where the claimant has had an impairment which came very close to meeting a listing, this court has refused to disturb the Secretary's finding on medical equivalence." *Retka*, 1995 WL 697215 at *2 (citing *Dorton v. Heckler*, 789 F.2d 363, 366 (6th Cir.1986) (per curiam)); *see Price v. Heckler*, 767 F.2d 281, 284 (6th Cir.1985) (per curiam).

The ALJ stated that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." (Tr. 23.) In so concluding, the ALJ gave "great weight" to the opinion of Dr. Jung Kim, a state agency medical consultant who stated Plaintiff was only moderately limited in her ability to follow detailed instructions and interact with the general public, and was not otherwise significantly limited.[4] (Tr. 30–31, 105–06.) Plaintiff has not presented a different medical opinion to establish that her conditions are medically equivalent to Listing 12.07, nor does she address the criteria which are relevant to whether Plaintiff's impairments are medically equivalent to Listing 12.07. Instead, Plaintiff baldly states that her additional severe impairments of obesity, borderline IQ, and depression satisfy the requirements of Listing 12.07. However Plaintiff fails to show how such equals the

---

[4]In Plaintiff's reply brief, Plaintiff argues that the ALJ erred in giving great weight to the opinion because Dr. Kim had not reviewed the entire record. (ECF No. 13, PageID.1288–89.) "When an ALJ relies on a non-examining source who did not have the opportunity to review later submitted medical evidence, especially when that evidence reflects ongoing treatment," the Sixth Circuit requires "some indication that the ALJ at least considered these [new] facts before giving greater weight to an opinion that is not based on a review of a complete case record." *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 642 (6th Cir. 2013) (internal citations and quotation marks omitted). Here, the ALJ discussed the notes and reports of all the doctors before making her decision. Accordingly, Plaintiff's claim lacks merit.

at least two of the Paragraph B criteria. Accordingly, Plaintiff's claim that she is disabled under Listing 12.07 is denied.

### B. Listing 11.03

Plaintiff next claims that the ALJ should have found that she met or equaled the requirements of Listing 11.03 for nonconvulsive epilepsy. The listing is described as follows:

> 11.03 *Epilepsy–nonconvulsive epilepsy (petit mal, psychomotor, or focal), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment*. With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 11.03. The ALJ reviewed Listing 11.03 along with Listing 11.02 and found that Plaintiff did not meet the requirements of either listing:

> Listing 11.02 requires documentation of convulsive epilepsy occurring more frequently than once a month in spite of at lest three months of prescribed treatment with daytime episodes of nocturnal episodes manifesting residuals, which interfere significantly with activity during the day. The evidence does not show a seizure pattern with frequency of non-convulsive seizures (with alteration of awareness or loss of consciousness and transient postictal manifestation of unconventional behavior or significant interference with activity during the day) as required under Listing 11.03.

(Tr. 24.) Plaintiff argues the ALJ erred by pointing to a September 26, 2011, notation from Dr. Linda Selwa who wrote that on September 23, 2011, Plaintiff had an "event" which "consisted of arrest of behavior, nonresponsiveness, and leaning to the right for 1-2 minutes." (Tr. 267.) This, however, is the only record Plaintiff points to that is not merely a recitation of her or her mother's subjective allegations. (*See* Tr. 745.) Such is not sufficient here to establish that Plaintiff met Listing 11.03. Moreover, as noted above, substantial evidence supports a finding that Plaintiff was not significantly interfered with in her daily activities,

11

as is required by the listing. Accordingly, the ALJ's determination is supported by substantial evidence, and Plaintiff's claim of error is denied.

### C. Severe Impairments

Plaintiff contends that the ALJ's RFC failed to address any limitations related to her severe impairments of migraines and psychogenic seizures. (ECF No. 11, PageID.1257–58.) Whether a claimant has a "severe impairment" is determined at step two of the sequential evaluation, and defined as an impairment or combination of impairments "which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). A claimant's RFC is determined at step four of the sequential evaluation. *See Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of her medically determinable impairments. 20 C.F.R. § 404.1545. RFC is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs" on a regular and continuing basis. 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c); *see Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 530 (6th Cir.1992). "A claimant's severe impairment may or may not affect his or her functional capacity to do work." *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007). This is because "[t]he regulations recognize that individuals who have the same severe impairment may have different RFCs depending on their other impairments, pain, and other symptoms." *Griffeth*, 217 F. App'x at 429, citing 20 C.F.R. § 404.1545(e). *See, e.g., West v. Colvin*, No. 5:14–69–KKC, 2014 WL 7177925 at *4 (E.D. Ky. Dec.6, 2014) ("[t]he ALJ is not required to incorporate all 'severe impairments' in her RFC assessment").

The ALJ thoroughly addressed the limitations posed by Plaintiff's migraines and seizures throughout the decision. At step two, the ALJ found that the migraines and seizures were severe impairments. (Tr. 22.) At step three, the ALJ considered whether they met or equaled a listed impairment, but found that they did not. (Tr. 23–24.) At step four, the ALJ considered Plaintiff's allegations of pain and reduced activities caused by her migraines and seizures, but found they were not as debilitating as Plaintiff alleged. (Tr. 28–29.) The ALJ's conclusion is well supported. Plaintiff's complaints of seizures have consistently failed to be supported by objective medical testing. (Tr. 260, 266–67.) In March, 2011, Dr. Christy Davis found no definitive evidence of a clinical seizure. (Tr. 359.) Another doctor believed that the episodes may have been brought on by stress. (Tr. 266–67.) Despite her headaches and seizures, Plaintiff was able to complete a wide range of daily activities. (Tr. 53–55, 217.) Based on this record, substantial evidence supports the ALJ's RFC determination. This determination accounted for the functional limitations caused by Plaintiff's migraines and seizures. Accordingly, Plaintiff's claim of error here is denied.

### D. Credibility

At the administrative hearing, Plaintiff argued that she was impaired to a far greater extent than that recognized by the ALJ. Plaintiff testified that she had headaches daily. Two to three times a week she experienced migraines that she described as being a five on a pain level of one through ten. (Tr. 67.) Two to three times a week she also experienced migraines on a level of nine or ten lasting for up to four hours. (Tr. 67–68.) She also stated she had seizures at least two to three times a month. (Tr. 70.) Plaintiff argues that the ALJ's credibility determination is not supported by substantial evidence because the ALJ erred in analyzing the required factors under 20 C.F.R. § 404.1529(c)(1) and according little weight to the statement that Plaintiff's mother gave in support of her claim for DIB benefits. (ECF No. 11,

PageID.1259–63.)

Credibility determinations concerning a claimant's subjective complaints are within the province of the ALJ. *See Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). The Court does not make its own credibility determinations. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). The Court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed." *Kuhn v. Comm'r of Soc. Sec.*, 124 F. App'x 943, 945 (6th Cir. 2005). The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the "substantial evidence" standard. This is a "highly deferential standard of review." *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012). "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 488 (6th Cir. 2005); *see Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) ("We have held that an administrative law judge's credibility findings are 'virtually unchallengeable.'"). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the Court] d[oes] not, of observing a witness's demeanor while testifying." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints." *Buxton v. Halter*, 246 F.3d at 773; accord *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993).

Meaningful appellate review, however, requires more than a blanket assertion by an ALJ that "the claimant is not believable." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007). The

*Rogers* court observed that Social Security Ruling 96–7p requires that the ALJ explain her credibility determination and that the explanation "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Rogers*, 486 F.3d at 248. The ALJ gave an adequate explanation why she found that Plaintiff's testimony claiming a greater level of functional restriction was not credible. It is well established that the ALJ is not required to discuss every factor or conduct a factor-by-factor analysis. *See, e.g., Storey v. Comm'r of Soc. Sec.*, No. 98–1628, 1999 WL 282700, at * 3 (6th Cir. Apr. 27, 1999); *Bowman v. Chater*, No. 96–3990, 1997 WL 764419, at * 4 (6th Cir. Nov. 26, 1997) ("While this court applied each of these factors in *Felisky* [*v. Bowen*, 35 F.3d 1027 (6th Cir.1994)], we did not mandate that the ALJ undergo such an extensive analysis in every decision."); *Hysell v. Comm'r of Soc. Sec.*, No. 2:14–cv–587, 2015 WL 4068722, at * 7 (S.D. Ohio Mar. 12, 2014); *Simmons v. Comm'r of Soc. Sec.*, No. 1:13–cv–203, 2014 WL 587172, at * 9 (N.D. Ohio Feb.14, 2014); *Ausbrooks v. Comm'r of Soc. Sec.*, No. 12–12144, 2013 WL 3367438, at * 19 (E.D. Mich. July 5, 2013); *Myland v. Astrue*, No. 1:08–cv–632, 2009 WL 5216067, at * 14 (W.D. Mich. Dec. 29, 2009). Despite Plaintiff's complaints, she admitted to being able to complete a wide variety of activities of daily living. (Tr. 51–53.) The ALJ also noted the inconsistencies between Plaintiff's statements regarding the frequency and severity of her migraines and seizures against the objective evidence which showed relatively conservative treatment, as well as a lack of correlating medical tests and physicians who concluded there was no definitive evidence of seizures. (Tr. 28–29, 360, 316, 781–92.)

Plaintiff and the vocational expert were the only witnesses providing testimony at Plaintiff's hearing. (Tr. 39.) Plaintiff's mother did not testify. She did, however, prepare a third-party function report in support

of her daughter's claim for benefits. (Tr. 231–41.) This statement was a statement from an "other source" under the regulations. 20 C.F.R. § 404.1513(d)(4). It was entitled to consideration. *See* SSR 06–03p, 2006 WL 2329939, at * 1, 4; *see also Finkbeiner v. Comm'r of Soc. Sec.*, No. 13–13906, 2015 WL 668058, at * 10 (E.D. Mich. Feb.17, 2015). The ALJ considered the statement provided by Plaintiff's mother and gave it the weight she deemed appropriate. (Tr. 31). The narrow scope of judicial review of the Commissioner's decision does not include re-weighing evidence. *See Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 533 (6th Cir. 2014) ("The ALJ, not this Court, weighs the evidence and testimony to make a credibility determination."). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The ALJ's factual finding regarding Plaintiff's credibility is supported by more than substantial evidence.

### E.     Medical Opinions

Plaintiff finally makes a number of claims regarding the ALJ's treatment of the medical opinions in the record. Plaintiff claims that the ALJ failed to provide good reasons for discounting the opinion of a consultative psychologist, failed to properly consider the opinion of a physician's assistant who had treated Plaintiff, and improperly gave more weight to the opinions of non-examining physicians over the opinions of the consultative psychologist and physician's assistant. (ECF No. 11, PageID.1263–65.) The Court is not persuaded.

On May 15, 2012, Plaintiff was examined by Dr. Robert Griffith, a licensed psychologist, for a consultative examination. (Tr. 398–402.) Plaintiff was given a "guarded" prognosis. The psychologist concluded that "the combination of [Plaintiff's] problems suggests that she will have challenges maintaining full-time employment." (Tr. 402.) Plaintiff argues that the ALJ failed to provide "good reasons" for

16

discounting this opinion. (ECF No. 11, PageID.1264.) The flaw in Plaintiff's argument is that Psychologist Griffith is not a treating source such that the ALJ was required to provide good reasons for discounting the opinion. *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007) (finding that a single examination of a patient by a doctor does not provide the requisite linear frequency to establish an "ongoing medical treatment relationship"). As such, the ALJ was only required to consider the evidence from Dr. Griffith in accordance with 20 C.F.R. §§ 404.1527(c) and 416.927(c). This the ALJ did. (Tr. 29.) While the ALJ did not specifically mention Dr. Griffith's statement that Plaintiff would have difficulty maintaining full-time employment, such error is harmless as it is not inconsistent with the ALJ's RFC. *See Pasco v. Comm'r of Soc. Sec.*, 137 F. App'x 828, 839 (6th Cir. 2005).

On November 12, 2012, Plaintiff was examined by David Cummings, a physician's assistant. In a progress note, Mr. Cummings wrote:

> Amy Lynn Weaver is a 31 y.o. female who presents for evaluation of headache. Symptoms began about several months ago. Generally, the headaches last about several hours and occur several times per week. The headaches do not seem to be related to any time of day or year. The headaches are usually moderate and are located in bil. temples. The patient rates her most severe headaches a 10 on a scale from 1 to 10. Recently, the headaches have been decreasing in frequency. Work attendance or other daily activities are affected by the headaches. Precipitating factors include: none which have been determined. The headaches are usually not preceded by an aura. Associated neurologic symptoms: decrease physical activity, depression and speech difficulties. The patient denies vision problems and vomiting in the early morning. Home treatment has included Imitrex oral and propanolol with little improvement. Other history includes: nothing pertinent. Family history includes no known family members with significant headaches.

(Tr. 1113–14.) Plaintiff concedes that as a physician's assistant, Mr. Cummings qualifies only as an "other source." (ECF No. 11, PageID.1265.) Plaintiff argues, however, that the ALJ failed to properly consider the opinion of Mr. Cummings that her "work attendance or other daily activities are affected by the

17

headaches." (Tr. 1113.) Plaintiff has not identified a basis for disturbing the Commissioner's decision. The ALJ is not required to discuss every piece of evidence, and her failure to do so does not indicate that the evidence was not considered. "[A]n ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 489 (6th Cir. 2005); *see Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004); *accord Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006).

SSR 06–3p does not require that an ALJ discuss opinions supplied by "other sources" or to explain the evidentiary weight assigned thereto. "[T]here is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision." 2006 WL 2329939, at * 6. "While Ruling 06–3p certainly encourages ALJ's to evaluate each opinion in the record, regardless of its source, the ruling is not written in imperative form." *Smith v. Comm'r of Soc. Sec.*, No. 4:09cv80, 2010 WL 1640271, at * 4 (E.D. Va. Apr. 22, 2010). SSR 06–3p consistently uses the permissive term "should." 2006 WL 2329939, at * 5–6.

Even if all this were not so, Plaintiff's claim suffers from the further flaw that the statement regarding her work attendance from. Mr. Cummings does not constitute a medical opinion. A medical opinion is defined as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2); 416.927(a)(2). Here, as shown above in context, Plaintiff merely presents a nebulous statement that repeats her subjective statement that work attendance is affected by her headaches. This statement provides no guidance or opinion on what Plaintiff could still do despite her impairments, and was

appropriately disregarded by the ALJ.

Plaintiff concludes this claim of error by stating that the ALJ erred in giving greater weight to the opinions of non-examining agency reviewers Dr. Jung Kim and Dr. Shanti Tanna over the opinions of Dr. Griffith and Mr. Cummings, who had examined Plaintiff. (Tr. 30, 81–108). Plaintiff, however, has failed to provide a medical opinion that is inconsistent with the RFC or the opinions of Dr. Kim and Dr. Tanna. Moreover, under certain circumstances, as here, the opinions of non-examining State agency medical or psychological consultants may be given greater weight than the opinions of treating or examining sources. Social Security 96–6p, 1996 WL 374180, *3 (July 2, 1996). This is so because "State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act." 1996 WL 374180, *2. Accordingly, Plaintiff's claim of error is rejected.

## CONCLUSION

For the reasons set forth herein, the Commissioner's decision will be **AFFIRMED**. A separate judgment shall issue.


Dated: January 15, 2016                    /s/ Paul L. Maloney
                                           PAUL L. MALONEY
                                           United States District Judge